# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA DICKINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MOBILE COUNTY, ALABAMA; ) | |
| MOBILE COUNTY SHERIFF SAM ) | CASE NO. 1:19-cv-00706 |
| COCHRAN; and METRO JAIL ) | |
| WARDEN NOAH PRICE "TREY" ) | |
| OLIVER, III, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## AMENDED COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

2. This Court has jurisdiction of plaintiff's Federal claims pursuant to 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b), as the majority of the defendants reside in this judicial district and the events and omissions giving rise to plaintiff's claims occurred within this judicial district.

## PARTIES[1]

4. Plaintiff Joshua Dickinson is of legal age, a citizen, and a resident of the state of Alabama and Clarke County. Plaintiff is an individual with a disability as that term is defined under the Americans with Disabilities Act and the Rehabilitation Act. He has a physical or mental impairment which substantially limits him in the major life activities of caring for himself, concentrating, and working. He is also regarded as having a disability and has a record of such. Plaintiff also has a serious health condition under the Rehabilitation Act and he is an employee who is eligible for benefits under that statute.

5. Defendant Mobile County, Alabama is an Alabama county. It is responsible for funding the Mobile Metro Jail. It is a public agency, and upon information and belief, a recipient of Federal financial assistance under the Rehabilitation Act. It is also an entity subject to suit under 42 U.S.C. 1983.

6. Defendant Sam Cochran was the Mobile County Sheriff at all relevant times. As the sheriff, among other things, he is responsible for management of the Mobile Metro Jail. Defendant has a statutory duty under Alabama law to attend to the needs of inmates in the jail.

---

[1] Plaintiff intends to add more individual defendants, in particular the agents of the Sheriff whose acts are described herein but have not been identified. Plaintiff will seek expedited discovery to identify all potential defendants.

7. Defendant Noah Price "Trey" Oliver was the Mobile Metro Jail Warden at all relevant times.

8. Plaintiff sues each of the individual defendants in their individual capacity unless otherwise noted. Each of the individual defendants acted under color of state law and within the scope of his employment when engaging in the misconduct described herein.

## FACTS

9. On January 9, 2018, Joshua Dickinson (Joshua) was arrested for a domestic violence charge, arising out of a dispute with his aunt during an emotional family gathering at his grandmother's hospital room.

10. Joshua was transported to the Mobile Metro Jail in Mobile, Alabama. He was processed through the Jail's intake system and placed in a three man cell which was locked down twenty-three hours a day. Joshua was allowed out of his cell and into a wedge day room one hour a day.

11. Upon information and belief, Joshua was assigned to this wedge and cell based upon his mental condition at the time. Upon information and belief, he was issued suicide prevention garb and kept under observation as were all other detainees in this wedge.

12. Joshua's first cell mate was a Black male with an obvious mental condition. The cell mate talked to himself all night but Joshua was unable to

3

communicate with him. The condition of this cell mate so frightened Joshua that he sought assistance from the Jail to see a psychiatrist but was denied the same.

13. A second cell mate, an Hispanic male, was brought in but was held only for twenty-four hours, and then was released.

14. On January 10, 2018, Joshua appeared in open court, in person, and pled not guilty to the charges against him. After hearing the evidence, the court held that the case was *nolle prossed*. Joshua was returned to the Jail and kept in detention for unknown reasons.

15. On January 11, 2018, between 6:30 and 8:00 in the morning, a Joshua Brown (Brown) was dragged into Joshua's cell by four or five correctional officers. Brown was in a rage and fighting with the correctional officers.

16. The officers stripped Brown and provided him a cloth to wear around his waist and top. Presumably, this clothing, like Joshua's, was meant to be suicide deterrent garb. Brown continued to be violently resistant to the guards.

17. The correctional officers left and closed the cell door, leaving the three detainees in the cell alone, Joshua, Brown, and the Black male who was originally in the cell.

18. Joshua turned his back on the others and began to do pushups against the wall when suddenly he was hit across the back of the head. As Joshua turned around, Brown attacked him with a switchblade, or some other commercially made knife, and stabbed Joshua in the right shoulder.

19. Joshua attempted to fight back and punched Brown away from him. Brown then stabbed Joshua in the left shoulder.

20. Brown also attempted to stab Joshua in the chest, and Joshua received more, serious stab wounds.

21. At some point, the cell door was opened and the two emerged, struggling into the day room.

22. Correctional officers were called to the wedge at this point, and tasered both Joshua and Brown. Joshua found himself lying in a huge pool of his own blood as he lost consciousness.

23. Joshua was taken to the University of South Alabama Medical Center where he was treated and his wounds were sutured.

24. Joshua was returned to Mobile Metro Jail and placed in a cell by himself.

25. The next morning, Joshua was bonded out by his mother.

26. Joshua suffered traumatic and serious physical and emotional injuries as a result of the assault.

27. Shortly following Joshua's release from the Mobile Metro Jail, he suffered an emotional breakdown. He was taken to the Clark County Jail and thereafter probated and committed to Brown-Whitfield Hospital, a mental institution in Demopolis, Alabama. Joshua suffered such severe emotional distress, rage, and anger due to the attack that it contributed to his hospitalization

and his commitment in Demopolis. This hospitalization was a direct result of the Defendants' violations of Joshua's Fourteenth Amendment rights.

28. In the months that followed, Joshua was contacted by the Mobile County District Attorney, Ashley Rich, in order to assist the District Attorney's office in the prosecution of Brown. After initially interviewing Joshua and preparing for trial, prosecutors stopped contacting him. Joshua is unaware of the outcome of the case against Brown.

29. Upon information and belief, Brown had a long history of violent behavior known to the law enforcement agents of the Mobile County Sheriff.

30. Upon information and belief, the personnel from the Mobile Metro Jail were aware of Brown's violent proclivities and the likelihood that he would violently attack anyone with whom he came in contact on January 11, 2018.

31. Upon information and belief, agents of the Sheriff of Mobile County who operated the Mobile Metro Jail, and in particular those responsible for the screening of incoming detainees, failed to properly search Brown (or others) and find an obvious weapon. But for their failure to properly search and discover said weapon, Joshua was severely injured.

32. Upon information and belief, about one week later, another inmate was stabbed in the Mobile Metro Jail by inmate Greg Hackett after being in Metro Jail for two weeks.

33. During the news coverage of the attack upon Joshua, Trey Oliver, the Warden of the Mobile Metro Jail, made the following admissions[2]:

    a. Brown was locked down in the docket room for a number of hours. He was disruptive and combative.

    b. When he finally "calmed down," Brown was transferred to a secure housing unit, or a special housing unit.

    c. A knife was produced and Brown cut Joshua.

    d. Something like this occurred when an Officer Green was murdered in the Intake.

    e. Apparently, a "few people didn't do their job."

    f. Sometimes when you get it wrong, something like a knife or gun can slip through.

    g. It was early in the morning. That will be one of our issues of concern or one of our areas we will look into. Is this a training issue? Is this a new employee issue, or what?

    h. Protocol is that we strip search these inmates before we move them to the back.

    i. Sometimes inmates that are being kept here are mingled with new arrestees and all that transpires in the docket area.

---

[2] https://www.facebook.com/FOX10News/videos/10156167278713944/

7

      j.      The docket area can become crowded.  It is inadequate, the size that it is now.  The Mobile County Commission is aware of that and plans are currently underway to expand the docket area.

      k.      If you get 8, 9, or 10 people at one time being processed, it creates some confusion.  And in a tight working space, sometimes things like this happen.

      l.      People don't always do what they're supposed to do.  We're not sure on that yet, but I have no doubt that after we review the security cameras, we will have the answers to exactly what happened and why.

34.    Based upon these admissions, it appears that the physical plant of the Mobile Metro Jail was so inadequately built or maintained that an adequate search could not be made of the incoming inmates and that failure of the Mobile County Commission was a proximate cause of Brown's attack on Joshua with a knife.

35.    The county commission is charged with maintaining jails and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. Ala. Code (1975) §§ 11-14-10, 11-14-13.  The counties' duties to "maintain a jail" under Ala. Code (1975) § 11-14-10 requires that it keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Keeton v. Fayette County*, 558 So.2d 884, 886 (Ala. 1989).  The Alabama Code provides for the counties to remain informed about conditions in

the jails. The county commission has the authority to inspect the jail without notice to the sheriff. Ala. Code § 11-14-22 (1989).

36. Further, based upon the admission of the Warden, training, supervision, and retention of certain correctional officer staff was so inadequate and so widespread that the Sheriff, Warden, and supervisory agents of the Mobile Metro Jail were deliberately indifferent to the Eighth and Fourteenth Amendment violations posed to the health and safety of the detainees held therein.

37. Despite plaintiff's vulnerability and lack of a serious criminal history, plaintiff was housed with violent inmates, including Joshua Brown, who on or about January 11, 2018, brutally attacked plaintiff, including stabbing him multiple times.

38. Defendants routinely housed non-violent inmates like plaintiff with violent inmates.

39. The Mobile Metro Jail, has been routinely handling far more inmates than for which it was designed.

40. Defendants have recognized the need for an adequate jail facility for a period extending long before Joshua's detention.

41. Because of the limitations of the facilities, jail personnel are limited in their ability to protect non-violent inmates from dangerous inmates.

42. These limitations were known to Defendants for an extended period. Nevertheless, with deliberate indifference, Defendants have not addressed the problem.

43. Long before the assault, Cochran, Oliver, and others, were aware that assaults were a serious problem. Defendants Cochran and Oliver, acting with deliberate indifference, routinely housed dangerous inmates in crowded conditions with non-violent inmates like Joshua.

44. Defendants Cochran and Oliver, acting with deliberate indifference, established an unreasonable and longstanding policy of not identifying and segregating inmates known or likely to be perpetrators of assaults.

45. The jail was both dangerously overcrowded and dangerously understaffed at the time plaintiff was attacked, putting inmates such as Joshua at substantial risk of harm.

46. Nevertheless, defendants Cochran and Oliver failed to promulgate, implement, and enforce adequate policies, procedures, and practices necessary to adequately supervise and monitor the housing units to maintain the safety of inmates therein.

## CLAIMS
## Count I - 42 U.S.C § 1983
## Failure to Protect
## (Against Mobile County, Cochran, and Oliver)

47. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

48. Pursuant to the Fourteenth Amendment of the United States Constitution, plaintiff is entitled to be free from a known and unreasonable risk of serious harm while in jail.

49. Defendants, acting individually and in conspiracy with other defendants, failed to protect plaintiff.

50. Defendants knew of and consciously disregarded the substantial risk that plaintiff would be injured while incarcerated, failing to protect him from harm.

51. The misconduct described in this count was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the rights of plaintiff and others and was objectively unreasonable.

52. Defendants' misconduct directly and proximately caused plaintiff to be subjected to an unreasonable risk of serious harm, and caused him to suffer damages including pain, suffering, fear, anxiety, rage, and other harmful physical and psychological harms, both from the brutal assault and its devastating aftermath.

## Count II - § 1983 Violation of Overdention
### (Against Cochran and Oliver)

53. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

54. Inmates and pre-trial detainees have a Fourteenth Amendment liberty interest and a due process interest in being released on time. Excessive confinement denies a detainee due process. Excessive confinement of an inmate constitutes cruel and unusual punishment.

55. Cochran, Oliver and other jail agents were on notice prior to the confinement of Joshua of their obligations to Joshua to release him in a timely manner. They were aware that failure to release Joshua in a timely manner constituted a violation of his due process rights as a detainee.

56. Upon information and belief, Cochran and Oliver were aware that inmates and pre-trial detainees have not been released from the Metro Jail on a timely basis. The excessive confinement abuses have been so widespread and well known as to constitute a custom and practice of the Defendants.

57. Despite the known dangers posed to Joshua, Cochran, Oliver, and other agents of the Jail not presently known were deliberately indifferent to the risks posed to Joshua by his excessive confinement.

58. Cochran and Oliver recklessly ignored Joshua's constitutional rights.

59. Joshua suffered injury, emotional distress, anxiety, frustration, and the loss of comfort of family as a result of his excessive confinement.

### Count III - § 1983 Failure to Train, Staff and Supervise
### (Against Cochran and Oliver)

60. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

61. Sheriff Sam Cochran and Warden Trey Oliver as a matter of policy and practice and with deliberate indifference, failed to properly train, assign, and supervise correctional officers and Joshua was damaged as a result the aforesaid conduct.

62. Upon information and belief, Cochran and Oliver were the final repositories of authority for the purposes of training and supervising staff to insure proper classification, cell assignment, medical care, and timely release of detainees. Their deliberate indifference to the dangers posed by these failures gave rise to Joshua's injuries.

63. Cochran and Oliver violated Joshua's Constitutional rights and are liable under 42 U.S.C. § 1983.

## Count IV – Americans with Disabilities Act (ADA)
## (Against Cochran and Oliver)

64. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

65. Plaintiff's psychiatric conditions were impairments that substantially limited one or more of his major life activities. Plaintiff, therefore, had a disability within the meaning of the ADA.

66. The Mobile County Metro Jail is a public building within the meaning of Title II of the ADA.

67. Defendants Cochran and Oliver denied plaintiff the benefits of the jail's protective programs on the basis of plaintiff's disabilities.

68. Defendants Cochran and Oliver refused to make a reasonable accommodation for plaintiff by providing him with appropriate protection to prevent or alleviate the likelihood of damage from an attack, even though accommodation would in no way alter the nature of the jail.

69. In the alternative, the Defendants Cochran and Oliver failed to appropriately accommodate Brown who himself exhibited tendencies of a disabled detainee.

70. Based upon the foregoing, Cochran and Oliver violated the ADA and plaintiff was damaged as a result.

## Count V - § 504 of the Rehabilitation Act
### (Against Cochran and Oliver)

71. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

72. Plaintiff's psychiatric conditions were impairments that substantially limited one or more of his major life activities. Plaintiff, therefore, had a disability within the meaning of § 504 of the Rehabilitation Act.

73. Defendants receive federal funds for the Mobile County Metro Jail's operations.

74. Defendants Cochran and Oliver denied plaintiff the benefits of the jail's protective programs on the basis of plaintiff's disabilities.

75. Defendants Cochran and Oliver refused to make a reasonable accommodation for plaintiff by providing him with appropriate protection to prevent or alleviate the likelihood of damage from an attack, even though accommodation would in no way alter the nature of the jail.

76. In the alternative, the Defendants Cochran and Oliver failed to appropriately accommodate Brown who himself exhibited tendencies of a disabled detainee.

77. Based upon the foregoing, Cochran and Oliver violated the ADA and plaintiff was damaged as a result.

## RELIEF SOUGHT

78. As relief, plaintiff seeks the following:

   a. Permit Plaintiff expedited discovery to allow the identification of all potential defendants.

   b. Appropriate declaratory and injunctive relief to remedy the unlawful policies and customs at the jail;

   c. That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

   d. That plaintiff be awarded against the individual defendants only such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover;

   e. That plaintiff be awarded prejudgment and post-judgment interest at the highest rates allowed by law;

   f. That plaintiff be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

   g. That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

Respectfully submitted this 25th day of September, 2019.

                                        *s/ Henry Brewster*
                                        Henry Brewster (BREWH7737)
                                        HENRY BREWSTER, LLC
                                        205 North Conception Street
                                        Mobile, Alabama  36602
                                        Tel:  251-338-0630
                                        Email:  hbrewster@brewsterlaw.net

Defendants May Be Served At:

Mobile County, Alabama
c/o Legal Department
205 Government Plaza
Mobile, AL 36644

Mobile County Sheriff Sam Cochran
510 S. Royal Street
Mobile, AL 36603

Metro Jail Warden Noah Price "Trey" Oliver, III
510 S. Royal Street
Mobile, AL 36603