# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSHUA DICKINSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **V.** | : | **CASE NO.: CV-19-00706** |
| | : | |
| **MOBILE COUNTY ALABAMA,** | : | |
| **MOBILE COUNTY SHERIFF SAM** | : | |
| **COCHRAN and MOBILE METRO JAIL** | : | |
| **WARDEN NOAH PRICE "TREY"** | : | |
| **OLIVER, III,** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANT SAM COCHRAN AND NOAH PRICE OLIVER, III's MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**COMES NOW** the Defendants, Sam Cochran, Sheriff of Mobile County (hereinafter "Sheriff Cochran) and Noah Price "Trey" Oliver, III, Warden of Metro Jail (hereinafter Warden Oliver) and pursuant to ***Rule 12(b)(6) of the Fed.R.Civ.P.*** hereby move the Court to dismiss the claims made against them in Plaintiff's Second Amended Complaint, filed November 12, 2019 (Doc. 30). As grounds for their Motion Sheriff Cochran and Warden Oliver state as follows:

## I.     Statement of the Facts.

The following facts come from the Plaintiff's Second Amended Complaint. The Plaintiff, Joshua Dickinson (Dickinson) was arrested on January 9, 2018. He was transported to the Mobile County Metro Jail (Metro). He was placed in a three (3) man cell which was locked down 23 hours a day. On January 11, 2018 Joshua Brown (Brown) was placed into the cell with Dickinson. Shortly after being placed in the cell Brown assaulted Dickinson. Brown stabbed Dickinson in his shoulder. Corrections Officers responded to the area, tasing both Dickinson and Brown. Dickinson received medical attention at the jail and was transported to USA Medical center where

he was treated and released that same day and returned to Metro. The following morning Dickinson was bonded out by his mother.

## II.     Standard of Review

Pursuant to **Rule 12(b)(6) of the Fed.R.Civ.P.** the Defendant may move to dismiss a Complaint on the basis that the Plaintiff has failed to state a claim upon which relief may be granted. See **Fed.R.Civ.P. Rule 12(b)(6).** To survive a Motion to Dismiss, a Plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)** ("to Survive a Motion to Dismiss a Complaint must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face. **[Twombly 550 U.S.] at 570.** A claim has facial plausibility when the Plaintiff pleads factual content that allows a Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. **Id at 556.** Since the **Rule 12 (b)(6)** Motion questions the legal sufficiency of a Complaint, in assessing the merits of a **Rule 12 (b)(6)** Motion, the Court must assume that all the factual allegations set forth in the Complaint are true. See, e.g. **United States v. Gaubert, 499 U.S. 315, 327 (1991)**.; see also **Iqbal, 556 U.S. at 678** ("the tenant that a Court must accept as true all of the allegations contained in the Complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice. **[Twombly 550 U.S.] at 555.** Moreover, all factual allegations are to be construed in the light most favorable to the Plaintiff. See, e.g. **Brower v. County of Inyo, 489 U.S. 593, 598 (1989).**

## III.     Argument and Citation to Authorities.

The defense of qualified immunity can be raised and considered on a Motion to Dismiss. **St. George v. Pinellas County, 285 F.3d 1334, 1337 (11ᵗʰ Cir.2002)**. "Qualified immunity protects

government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' ***Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir.2003).*** Qualified immunity protects from suit all but the plainly incompetent or one who is knowingly violating the federal law. ***Id.*** The questions of qualified immunity should be resolved at the earliest possible stage in the litigation. ***Id.*** A District Court should, therefore, grant the defense of qualified immunity on a Motion to Dismiss if a complaint fails to allege the violation of a clearly establish constitutional right. ***Id.***

In order to receive qualified immunity the public official must prove that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. ***Carollo v. Boria, 833 F.3d 1322, 1328 (11th Cir.2016)***. It is clear that the actions complained of in Dickinson's Second Amended Complaint were ones that would have been taken by Sheriff Cochran and Warden Oliver within their discretionary authority. While Count I states it is brought against Sheriff Cochran and Warden Oliver for failing to protect Dickinson, there are no factual allegations that they personally knew Dickinson was incarcerated or were aware that Dickinson was specifically under any substantial risk to being injured while incarcerated. The Second Count is based on supervising and training jail staff.

Assuming for purposes of this motion that Dickinson's Fourteenth Amendment Rights were violated, the Court must determine whether Sheriff Cochran or Warden Oliver's Supervisory actions caused the alleged Constitutional violations.

It is well established in this Circuit that Supervisory officials are not liable under ***§1983*** for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. ***Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999)***; ***Gonzales v. Reno, 325 F.3d***

*1228, 1234 (11ᵗʰ Cir. 2003).* Instead, Supervisory liability under *§1983* occurs either when the Supervisor personally participates in the unconstitutional conduct or when there is a causal connection between the actions of a supervising official in the alleged constitutional deprivation *Gonzales, 325 F.3d at 1234; Brown v. Crawford, 906 F.2d 667, 671 (11ᵗʰ Cir.1990).* The necessary causal connection can be established "when a history of widespread abuse puts the responsible Supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzales, 325 F.3d at 1231* (quoting *Braddy v. Fla. Dept. of Labor and Empl. Sec., 133 F.3d 797, 802 (11ᵗʰ Cir. 1998).* Alternatively, the causal connection may be established when a Supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the Supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Gonzales, 325 F.3d at 1234-35 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11ᵗʰ Cir. 1991).*

The standard by which a Supervisor is held liable in his individual capacity for the actions of the subordinate is extremely rigorous. *Gonzales, 325 F.3d at 1264.*

The deprivations that constitute widespread abuse sufficient to notify the Supervising official must be obvious, flagrant, rampant and of a continued duration, rather than isolated occurrences. *Hartley, 193 F.3d at 1269.*

In lawsuits brought pursuant to *42 U.S.C. §1983*, the qualified immunity inquiry and the *Rule 12 (b)(6))* standard become intertwined. *GJR Invs., Inc. v. Cnty. of Escambia, Florida, 132 F.3d 1359, 1366 (11ᵗʰ Cir.1998)*, overruled on other grounds as recognized in *Randall v. Scott, 610 F.3d 701, 709 (11ᵗʰ Cir. 2010); Wooten v. Campbell, 49 F.3d 696, 699 (11ᵗʰ Cir.1995).* In order to protect public officials from meritless claims, the complaint must contain "specific, nonconclusory allegations of facts that will enable to the District Court to determine that those

facts, if proved, will overcome the defense of qualified immunity. ***Dalrymple, 334 F.3d at 1996.*** Conclusory assertions of custom or policy resulting in a deliberate indifference are not sufficient to bootstrap a claim for supervisory liability. See ***Dolby School Bd. of Broward Cnty, Fla., 604 F.3d 1248, 1267 (11th Cir. 2010)***. A plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the Supervisor at issue had actual or constructive notice that a particular omission in their training program causes his employees to violate the citizens constitutional rights and that armed with that knowledge the Supervisor chose to retain the training program. ***Keith v. Dekalb Cnty, Ga., 749 F.3d 1034, 1052 (11th Cir.2014).*** A demonstration that a Supervisor was on actual constructive notice as to the deficiency of training or a pattern of similar constitutional violations by untrained employees is ordinarily necessary. ***Id.*** A Supervisor's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. ***Connick v. Thompson, 563 U.S. 52, 61 (2011).***

In Dickinson's previous two (2) complaints he made clear he was suing Sheriff Cochran and Warden Oliver in their individual capacities only. He did not specifically state in his Second Amended complaint that he is suing them in their individual capacities only but it can be assumed since they have Eleventh Amendment immunity in their official capacities that he is still pursuing only individual claims against them. See ***Carr v. Florence, 916 F.2d 1521 (11th Cir.1990)***. Count I is a failure to protect claim and Count II is a failure to train staff and supervise. There are no allegations that Sheriff Cochran or Warden Oliver personally participated in any of the decisions regarding Dickinson during his incarceration at Metro. As such, in both Count I and Count II the claims against Sheriff Cochran and Warder Oliver are in their capacity as Supervisors.

One of the basis for Dickinson's contention that there was widespread abuses was an interview given by Warden Oliver regarding the incident involving Dickinson and Brown. In the

previous two complaints filed by Dickinson he gave the citation for the interview. ***(Doc. 2, Page ID. 24)*** He omitted the reference to the interview, probably because as set out in the prior Motion to Dismiss, the Court could consider what was actually said in the interview in weighing the Motion to Dismiss. Defendants request the Court review the actual interview found at https://www.facebook.com/Fox10News/videos/10156167278713944/, to see whether the statements made by Warden Oliver provide a basis for finding there were widespread abuses prior to Dickinson's assault. The Defendants contend that Warden Oliver's stated that there were issues (but not widespread abuse) that were being addressed and that nothing about the causation of the attack on Dickinson would be known until an investigation was completed. Nothing in the interview given by Warden Oliver could be the basis for an allegation there was widespread problems or issues at the jail with regard to inmate on inmate attacks or with regard to training of Corrections Officers.

Dickinson also references a letter from the Department of Justice addressed to Sheriff Cochran and Mobile County sometime in 2009. Again, no specifics on exactly what the letter contained whether there were specific references to problems. Also, no reference to any response made to the letter. As such, that cannot form the basis of placing Sheriff Cochran or Warden Oliver on notice of widespread abuses or problems.

Finally, Dickinson references three (3) other incidents. The first one was an arrestee who assault a Police Officer prior to being booked into Metro Jail. This was the tragic incident involving Mobile Police Officer Steven Green who was killed by an arrestee in the Sally Port before he was ever handed over to the Metro staff. Nothing with regards to that incident has any bearing on inmate-on-inmate attacks. Dickinson then references two (2) other inmate-on-inmate attacks, one in January 2018 and one in August 2019. Again, without any particulars, two (2)

attacks both of which occurred after his attack does not serve to place Sheriff Cochran or Warden Oliver on notice of any widespread problems. It should be noted that the Eleventh Circuit has stressed that a prison custodian is not the guarantor of a prisoner's safety. ***Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1321 (11th Cir. 2005).*** Inside a prison's volatile community Prison Administrators are under an obligation to take reasonable measures to guarantee the safety of the inmates. ***Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).*** Therefore, not every injury suffered by one prisoner at the hands of another translates into a constitutional liability. ***Purcell 400 F.3d at 1319.*** In general, a Plaintiff must show more than a generalized awareness of risk to make out a deliberate indifference claim. ***Caldwell v. Warden, 748 F.3d 1090, 1101 (11th Cir.2014),*** occasional, isolated attacks by one prisoner or another may not constitute cruel and unusual punishment. ***Purcell, 400 F.3d at 1320.***

## IV.    CONCLUSION

For the reasons set out above the claims against Defendants Sheriff Cochran and Warden Oliver should be dismissed.


Respectfully submitted,

s/K. Paul Carbo, Jr
K. PAUL CARBO, JR. (CARBK8014)
paul.carbo@atchisonlaw.com
***Attorney for Defendants***

THE ATCHISON FIRM, P.C.
3030 Knollwood Drive
Mobile, AL  36693
(251) 665-7200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this the 25th day of November, 2019, that I have filed the foregoing using the CM/ECF system, which will send electronic notification to all counsel of record.

s/K. Paul Carbo, Jr
K. PAUL CARBO, JR.